**STATE of South Dakota, Plaintiff and Appellee,**

v.

**André WHITNEY, Defendant and Appellant.**

**No. 17454.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 16, 1992.

Decided June 24, 1992.

Mark Barnett, Atty. Gen., Gary R. Campbell, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Richard L. Bode of Bode Law Office, Rapid City, for defendant and appellant.

AMUNDSON, Justice.

Andre' Whitney ("Whitney") appeals from his judgment of conviction for child abuse, which was based on his plea of

guilty but mentally ill. The issue on appeal is whether the trial court erred in accepting Whitney's plea of guilty but mentally ill. We reverse and remand for further proceedings.

## FACTS

Personnel from the Rapid City Community Care Center informed the Pennington County Sheriff that Whitney and his wife Ernestina were abusing their child by neglecting to provide proper nourishment and medical care. Investigation of the complaint led to child abuse charges against both Whitney and Ernestina.

Whitney and Ernestina have two children. The child involved in this case is Sarah, then a three-month-old infant. When investigators took custody of Sarah she was malnourished and in need of medical assistance. Whitney has strong religious beliefs which told him that medical care was unnecessary and that prayer was all Sarah needed. Whitney had delusional beliefs that he was a prophet of God and had the power to heal Sarah without medical assistance.

On May 23, 1990, Whitney was charged with child abuse under SDCL 26–10–1. The trial court appointed legal counsel to represent him. State filed a motion requesting a psychiatric examination to determine whether Whitney was competent to stand trial. The trial court ordered the examination.

Dr. Ramesh Somepalli evaluated Whitney on August 9, 1990. Dr. Somepalli determined that at the time of the examination Whitney was acutely psychotic and was suffering from chronic, undifferentiated schizophrenia. Dr. Somepalli noted Whitney's deep religious beliefs concerning the care of his children. Whitney's beliefs were delusional because he believed he was in direct contact with God. Dr. Somepalli found that Whitney "was most probably mentally ill at the time of the alleged child abuse ..." Dr. Somepalli determined that at the time of the August 9, 1990 examination Whitney was not competent to stand trial.

On August 21, 1990, based on Dr. Somepalli's evaluation, the trial court committed Whitney to the Human Services Center for medical treatment of his psychiatric condition. Dr. Rodgers Wilson, the staff psychiatrist at the Human Services Center, issued a certificate of recovery for Whitney on September 18, 1990. He said "it is my opinion that Andre Whitney has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense." Dr. Wilson also noted that "at the time of the alleged neglect, he was most likely psychotic."

Whitney was discharged from the Human Services Center when medication moderated his psychiatric condition. Shortly after Whitney was discharged, his counsel filed a motion requesting the court to order Whitney to continue taking his medication. Counsel explained that Whitney had stopped taking his prescribed psychotic medication and was slipping back into incompetency. Dr. Charles Lord, a psychiatrist with West River Mental Health Center, supported the motion through a letter to the trial court which noted that without the medication Whitney would continue to deteriorate. On October 3, 1990, the trial court ordered Whitney to continue his medication and authorized forcible administration of the medication.

On October 15, 1990, Whitney's counsel requested another psychiatric examination to determine Whitney's competency to stand trial. Dr. Somepalli reevaluated Whitney and on December 11, 1990, issued a certificate of recovery in which he stated that Whitney was competent to stand trial. The trial judge set a trial date.

Whitney agreed to plead guilty but mentally ill as part of a plea bargain. Under the plea bargain, State agreed to allow Whitney to produce evidence in mitigation and also agreed not to attempt to aggravate the case at sentencing. Whitney and State did not agree to any reduced sentence. Whitney was not even guaranteed that he would receive psychiatric care while incarcerated. In short, Whitney waived his

right to trial in return for the State's promise not to aggravate at sentencing.

The trial judge questioned Whitney at some length about his decision to plead guilty but mentally ill.

The Court: Why are you pleading guilty?

Whitney: Because the doctors say that you can be mentally ill, even though you are seeing it right.

The Court: I don't follow you. Could you explain that a little bit?

Whitney: You can be mentally ill and not know it.

The Court: Right. But if you are mentally ill, as defined by the law, you are unable to understand right from wrong or are not able to appreciate the difference between right and wrong from the time you are mentally ill and unable to bring your conduct within the limits of right and wrong and then you are mentally ill under the law and you are not responsible. The law doesn't punish people who are mentally ill, for the things, the offenses they commit when they are in that kind of condition. I know we talked about mentally ill in different ways, different degrees of mental illness, but if you were so mentally ill at the time that your baby was starving that you couldn't know right from wrong and conform your conduct to that right and wrong, then the law does not hold you accountable.

Whitney: Like I say, her growth went from five pounds to five pounds eight ounces when Doctor Mortimer got her. I thought that was her rate of growth for children that age.

The Court: He testified at the trial [the trial of Ernestina] and said that the baby was severely dehydrated and malnourished and he put her on an IV and she gained weight remarkably once she was in the hospital and feeding she was ravenous and she ate everything that they gave her and more. She ate and ate and

ate, just as if nobody had been feeding her.

Whitney: That's not true. We were feeding her the whole time, she just didn't grow during that time. She was bound to start doing that later and that's what happened with me when I was a kid. I was extremely skinny for nine weeks and after nine weeks I totally went to the opposite and was fat and chubby, so I'm just saying that it happened at the right time or wrong time.

The Court: Why are you pleading guilty? Why not let the jury decide this case? Why not tell the jury what you are telling me and decide whether you are guilty, or not guilty?

Whitney: I don't think I can beat the doctor's testimony.

The Court: So you are making a calculated decision here, believing that it's better to plead guilty than to go to trial thinking that the evidence is against you?

Whitney: I can't tell.

Whitney consistently maintained that he did not know he was doing anything wrong at the time of the alleged abuse to Sarah. The trial court relied on the psychiatrist's reports to find that Whitney was capable of understanding right from wrong at the time of the alleged abuse. The trial court accepted the plea of guilty but mentally ill and sentenced Whitney to ten years in the penitentiary.[1] Three years of the sentence were suspended on several conditions, including that Whitney undergo psychotherapy as needed and continue to take his prescribed medication. Whitney appeals the judgment of conviction.

## DECISION

This case presented a difficult situation for the trial court to resolve. Whitney wanted to plead guilty but mentally ill, but continued to insist that at the time of the abuse he did not know he was doing anything wrong.

1. Based on the transcript quoted above, one cannot help but wonder whether Whitney understood how little he was getting in return for his plea of guilty but mentally ill. This is especially true since the trial court imposed the maximum sentence on Whitney even without the State providing any evidence in aggravation.

SDCL 22–1–2(24) defines "mental illness" as:

a substantial psychiatric disorder of thought, mood or behavior which affects a person at the time of the commission of the offense and which impairs a person's judgment, *but not to the extent that he is incapable of knowing the wrongfulness of his act.* Mental illness does not include abnormalities manifested only by repeated criminal or otherwise antisocial conduct; (emphasis added)

 In essence, Whitney contends that his mental condition had progressed beyond mere mental illness to insanity.[2] If Whitney was insane at the time of the commission of the crime, guilty but mentally ill would not be a legally appropriate plea. *See* SDCL 23A–7–2 and 23A–7–14. The trial court relied on the psychiatrist's reports in the record to find that Whitney understood right from wrong at the time of the alleged abuse of Sarah. Based on this finding the trial court accepted the guilty but mentally ill plea. After carefully reviewing the record in this case we have determined that the trial court was clearly erroneous in determining that Whitney understood right from wrong at the time of the alleged abuse. The trial court's finding is simply not supported by the evidence in the record.

Defendants in criminal cases are sometimes willing to enter guilty pleas in circumstances which do not justify a guilty plea. That is one of the reasons trial courts are required to establish a factual basis, on the record, before accepting a guilty plea. SDCL 23A–7–2. Similarly, with guilty but mentally ill pleas the trial court must establish a factual basis on the record which justifies a finding that the criminal defendant was mentally ill at the time of the alleged offense. SDCL 23A–7–16. In this case, Whitney wanted to plead

guilty but mentally ill because his wife had already been convicted and he felt certain that he would also be convicted. When the trial judge asked him why he did not want to go to trial, Whitney answered: "I don't think I can beat the doctor's testimony."

The trial court must establish a factual basis before accepting a plea of guilty but mentally ill. SDCL 23A–7–16. Whitney repeatedly asserted that he did not know that he was doing anything wrong at the time Sarah was suffering. Whitney would not or could not admit to facts which established the elements of the crime. "[I]f the defendant cannot or will not admit the facts establishing the elements of the crime, the trial court may admit transcripts of testimony, oral testimony, or other sworn statements or tangible evidence which will satisfy the court of the existence of the factual basis for the plea." *State v. Sutton*, 317 N.W.2d 414, 416 (S.D.1982).

The trial court in this case relied on reports filed by two psychiatrists. Those reports do not establish that Whitney knew right from wrong at the time of the alleged abuse. The two psychiatrist's reports contain only minimal information on Whitney's state of mind at the time of the alleged abuse of Sarah. Dr. Somepalli suggested in his first psychiatric report that Whitney was "most probably mentally ill" when he committed the abuse. Dr. Lord stated that Whitney was "psychotic" at the time of the abuse. Neither Dr. Somepalli nor Dr. Lord gave an opinion or were asked to give an opinion that Whitney could distinguish right from wrong at the time of the charged incident. There was no factual basis establishing that Whitney knew right from wrong at the time of the alleged abuse. We reverse the conviction and remand to the trial court so Whitney can be thoroughly evaluated by a psychiatrist and the trial court can determine whether Whit-

---

**2.** Insanity is defined in SDCL 22–1–2(20) as: the condition of a person temporarily or partially deprived of reason, upon proof that at the time of committing the act charged against him, he was incapable of knowing its wrongfulness, but not including an abnormality manifested only by repeated unlawful or antisocial behavior.

Thus there is a legal distinction between insanity (not being capable of knowing the wrongfulness of one's acts) and mere mental illness (disorder which impairs a person's judgment but not to the extent of insanity). *See State v. Baker*, 440 N.W.2d 284 (S.D.1989)

ney could distinguish right from wrong at the time of the alleged abuse.

Having reversed the judgment based on the trial court's error in accepting the plea of guilty but mentally ill, we find it unnecessary to address the other issues raised by Whitney.

MILLER, C.J., and WUEST and SABERS, JJ., concur.

HENDERSON, J., specially concurs in part and dissents in part.

HENDERSON, Justice (specially concurring in part; dissenting in part).

## SPECIAL CONCURRENCE

Four doctors advised our court system, essentially, that Whitney was chronically mentally ill and delusional when the offense occurred. Later, Whitney being acutely psychotic and suffering from chronic, differentiated schizophrenia, was not in a free and open mental state to enter any type of plea. *See* transcript, infra. These four doctors were Doctors Somepalli, Dr. Wilson, Dr. Manlove, and Dr. Lord. Simply put, Whitney could not enter a knowing, intelligent and voluntary plea. *See, State v. Lashwood,* 384 N.W.2d 319, 321 (S.D.1986). It is the *totality* of the factual circumstances which must be considered to fulfill a determination if the plea was knowing, intelligent, and voluntary. The transcript reveals the following colloquy:

THE DEFENDANT: I want to accept the plea bargain if I can get a reasonable sentence out of it, you know, because like I said, I wasn't even trying to do anything to my kid, but I'm finding out this now, what I did, I didn't know then.

THE COURT: We have talked about this before, your defense of being mentally ill at the time, and based upon what the doctor said, it sounds like a fairly good defense, that you were mentally ill at the time. *Virtually every psychiatrist that looked at you and ex-*

*amined you has said, that at least at the time they saw you you were mentally ill to the extent that you were not able to assist your lawyer and you were not able to appreciate the proceedings and understand the proceedings enough to be of assistance to your lawyer.*[1] (emphasis supplied mine). So that means to me that there is at least a reasonable indication that you have some defense here and that the jury, if they believed it and you were mentally ill to the degree that's required, they could say, well, we are going to find that he's guilty by reason of mental illness, and he didn't know what he was doing at the time. If he did, he would have made sure that his baby got enough food and water and nutrients. Do you follow me?

THE DEFENDANT: Yeah.

It is the position of this Justice that the GBMI statutes in this state are unconstitutional and that is an additional reason why, in my opinion, Whitney cannot be adjudicated to be "guilty but mentally ill." *State v. Baker,* 440 N.W.2d 284, 293 (S.D.1989) (Henderson, J., dissenting); *see also, Robinson v. Solem,* 432 N.W.2d 246, 252–58 (S.D.1988) (Henderson, J., dissenting); *State v. Robinson,* 399 N.W.2d 324, 327–30 (S.D.1987) (Henderson, J., dissenting). Our State Legislature has never seen fit to repair these statutes. Notice, when reading these dissents, the statement in the majority opinion as follows: "Whitney was not even guaranteed that he would receive psychiatric care while incarcerated."

## DISSENTING IN PART

I dissent, in part, to that which is the ultimate decision of this Court which is: "We reverse the conviction[2] and remand so that Whitney can be thoroughly evaluated by a psychiatrist to determine whether he could distinguish right from wrong at the time of the alleged abuse." In my opinion, this case should be remanded to entirely dismiss the proceedings below. Whitney

---

1. At this juncture, the arraignment and plea should have terminated.

2. With that conclusion, I agree.

should not have to go through another trial and the State of South Dakota should not have the right to now try to bolster its case with any new psychiatrist or any new evaluation. The State could not prove a case before and it should not be given a second bite of the apple to try to establish a case now. It is bound by its previous testimony. Any evidence would be stale and another psychiatrist could only form an opinion based upon what these four doctors previously expressed. Such evidence would be cumulative and lack objectivity. Whitney should not be put through more pain and anguish. He needs mental help, not criminal prosecution again. Would the courts of South Dakota now require Whitney, under the state of this record, to prove that he is insane—after he is charged again? *See,* federal decisions cited in my special writing in *Baker, supra.* In my opinion, this onus of proof would be a miscarriage of justice under these facts.