2000 SD 111

**Joaquin RAMOS, Petitioner and Appellant,**

v.

**Douglas WEBER, Warden South Dakota State Penitentiary, Appellee.**

**No. 21141.**

Supreme Court of South Dakota.

Considered on Briefs March 22, 2000.

Decided Aug. 16, 2000.

Rehearing Denied Sept. 27, 2000.

Steven R. Binger, Sioux Falls, Attorney for petitioner and appellant.

Mark Barnett, Attorney General, Gary Campbell Assistant Attorney General, Pierre, Attorneys for appellee.

KONENKAMP, Justice.

[¶ 1.] In this habeas appeal the applicant contends that (1) the sentencing court denied him due process of law in concluding that his prospects for rehabilitation were remote, and (2) his attorneys rendered ineffective assistance in not seeking psychological assessments before sentencing. We find both claims unsupported and affirm.

## A.

[¶ 2.] Joaquin Jack Ramos shot his girlfriend to death during a domestic conflict and later pleaded guilty to first degree manslaughter. He was sentenced to life in prison. He twice moved for reconsideration of the sentence and then sought to withdraw his guilty plea. The sentencing court denied all his motions. He appealed, contending that his life sentence was cruel and unusual punishment in violation of the Eighth Amendment, and that he was entitled to withdraw his guilty plea because the State violated its agreement by commenting at sentencing that the death was nonaccidental. We affirmed. *State v. Ramos*, 1996 SD 37, 545 N.W.2d 817 [*Ramos I* ].

[¶ 3.] Ramos then sought habeas corpus relief, claiming that the sentencing court's decision was based on the false assumption he could not be rehabilitated, that he received ineffective assistance of counsel, and that his sentence violated due process because he had no criminal intent. His habeas application was denied. He now appeals, alleging that (1) due process was violated when he was sentenced to life in prison because there was an insufficient basis for the court's belief that he could not be rehabilitated, and (2) he had ineffective assistance of counsel because his attorneys did not request a psychological examination for sentencing purposes or offer other evidence of his prospects for rehabilitation.

## B.

[¶ 4.] Habeas corpus is no substitute for direct review. Because a habeas action is a collateral attack on a final judgment, our scope of review is limited:

On habeas review, the petitioner has the initial burden of proof. We review the habeas court's factual findings under the clearly erroneous standard.

Habeas corpus can be used only to review (1) whether the court had jurisdiction of the crime and the person of the defendant; (2) whether the sentence was authorized by law; and (3) in certain cases whether an incarcerated defendant has been deprived of basic constitutional rights.

*Lodermeier v. Class*, 1996 SD 134, ¶ 3, 555 N.W.2d 618, 621–22 (quoting *Loop v. Class*, 1996 SD 107, ¶ 11, 554 N.W.2d 189, 191). Habeas applicants bear the initial burden of proof "to establish a colorable claim for relief." *Jenner v. Dooley*, 1999 SD 20, ¶ 11, 590 N.W.2d 463, 468.

## C.

[¶ 5.] In his direct appeal, Ramos unsuccessfully attacked his life sentence as cruel and unusual under the ·Eighth Amendment. In this habeas action he argues that his sentence violates due process under the Fourteenth Amendment. He cites *Wabasha v. Leapley*, 492 N.W.2d 610 (S.D.1992), where we stated that "[q]uestions of constitutional magnitude involving due process are reached when a defendant is sentenced on the ·basis of assumptions concerning his criminal record which are materially untrue. Sentences based upon material misinformation or erroneous assumptions violate due process." *Id.* at 611 (internal and other citations omitted).

[¶ 6.] The erroneous assumption made at his sentencing, Ramos alleges, was the judge's belief that he could not be rehabilitated. At sentencing Judge Jeff Davis remarked:

I think the danger that you represent to society is epitomized by the manner in

which you handle your relationships with people[.]

* * *

This is the first time you have been charged and convicted of a felony. Your other instances with the law are misdemeanors. I will be the first to admit that.

When one looks at the nature of the offenses, however, they all have some degree of violence associated with them, Mr. Ramos, violence largely centered around those individuals that you supposedly held near and dear and, with the exception of Barry Webb, at the Blue Lantern, involve women. It appears that your argument with Mr. Webb in some manner focused on your relationship with Miss Martines.

The instances in which you lose control have become more frequent. The timewise shows that.

* * *

That night, in my mind, is a control issue, Mr. Ramos. You got home. Debbie was not there. You inquired about her presence. As you began to lose your temper more and more, not just to strangers, attempted to remove the children. John and Cindy Jibben were there. You had been with Mr. Jibben. Not taking at even full value Mr. Jibben's comments because he also could only see what he saw and relate from his perspective what they were.

The control issue only had to rise to a certain point with you in your relationships with a spouse or a loved one because you had power and authority over them. You didn't have that related to Mr. Melendez or Mr. Jibben and you thought you needed to get a gun, and that, Mr. Ramos, in my mind, is the distinction in this area.

* * *

I think, until it reaches a point in time that you are able to control those emotions, control your desire to control those people around you, that the interest of rehabilitation cannot be addressed, and it appears to me that the goal of rehabilitation in this case cannot be achieved for a very, very long time, and that you must forfeit your right to be free in society for a substantial period of time in order to protect society.

In sum, then, the judge observed only that rehabilitation was a long-term prospect.

[¶ 7.] Because the sentencing judge did not firmly assess how long it might take for rehabilitation and instead assumed it would take a long time, Ramos argues, the imposition of a life sentence violated due process. The habeas court ruled that Ramos was making the same argument in his habeas application under the Fourteenth Amendment (due process) that he made on appeal under the Eighth Amendment (cruel and unusual punishment).

[¶ 8.] The doctrine of res judicata disallows reconsidering an issue that was actually litigated or that could have been raised and decided in a prior action. *SDDS, Inc. v. State*, 1997 SD 114, ¶ 16, 569 N.W.2d 289, 295 (quoting *Hogg v. Siebrecht*, 464 N.W.2d 209, 211 (S.D.1990)). "The purpose behind the doctrine is to protect parties 'from being subjected twice to the same cause of action, since public policy is best served when litigation has a finality.'" *Id.* (quoting *Moe v. Moe*, 496 N.W.2d 593, 595 (S.D.1993)). This due process challenge could have been raised in the direct appeal along with the Eighth Amendment challenge. Under the doctrine of res judicata, we will not review successive attacks on a sentence, especially when all the grounds could have been raised in the earlier proceeding. *Davi v. Class*, 2000 SD 30, ¶ 50, 609 N.W.2d 107, 118; *Lodermeier*, 1996 SD 134, ¶ 24, 555 N.W.2d at 626; *Miller v. Leapley*, 472

N.W.2d 517, 519 (S.D.1991). We affirm the habeas court's ruling.

### D.

[¶ 9.] Ramos argues that his attorneys were ineffective in not obtaining psychological evaluations before sentencing to show that his rehabilitative prospects were not "so unlikely" that rehabilitation should "be removed from consideration in sentencing." *Bult v. Leapley*, 507 N.W.2d 325, 328 (S.D.1993). In *Ramos I* we wrote that amenability to rehabilitation was a fact question to be decided by the sentencing court. At sentencing, the judge found that Ramos was unprepared for rehabilitation "until he could control his desire to control the people around him." In upholding the sentence, we also commented that "[t]here was no expert testimony or solid evidence that Ramos was capable of rehabilitation." *Ramos I*, 1996 SD 37, ¶ 19, 545 N.W.2d at 821 (emphasis omitted). Accordingly, as part of this habeas proceeding, Ramos obtained psychological evaluations from Michael J. McGrath, Ph.D. and William P. Ferguson, Ph.D.

[¶ 10.] Ferguson assessed rehabilitation potential as "fair." His diagnosis: Axis I, Intermittent Explosive Disorder; Axis II, Mixed Personality Disorder with narcissistic, antisocial, and paranoid features. He cautioned that Ramos "has much work to do insofar as coming to terms with his narcissism, anger and relationships with women."

[¶ 11.] McGrath's assessment was somewhat more optimistic. He did not diagnose an Axis I disorder, although he found an Axis II, Antisocial Personality Disorder. He acknowledged that "Clearly Mr. Ramos has a long history of acting out behaviors, as well as behaving in irresponsible ways." McGrath thought Ramos could, "more likely than not," be rehabilitated. With "extended and stringent" parole conditions, McGrath concluded, Ramos "may well have the potential for rehabilitation, i.e., altering the previously maladaptively acting out behaviors."

[¶ 12.] We follow the test for ineffective assistance of counsel prescribed in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, *reh'g denied*, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984). *See Jones v. State*, 353 N.W.2d 781, 784–86 (S.D.1984). In *Strickland*, the United States Supreme Court stated:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction ... has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. The question whether trial counsel was ineffective is a legal question, reviewable de novo. *Jenner*, 1999 SD 20, ¶ 16, 590 N.W.2d at 470 (citing *Lykken v. Class*, 1997 SD 29, ¶ 6, 561 N.W.2d 302, 304–05). We presume the competence of counsel, and habeas applicants must overcome that presumption. *Id.* (citing *Kimmelman v. Morrison*, 477 U.S. 365, 381, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305 (1986)). Applicants must prove that the outcome was prejudiced by inferior performance of counsel. *Hofer v. Class*, 1998 SD 58, ¶ 9, 578 N.W.2d 583, 585. Prejudice means "a reasonable probability that, but for the unprofessional errors of counsel, the result of the proceeding would have been different." *Phyle v. Leapley*, 491 N.W.2d 429, 432 (S.D.1992), *as modified by*

*Hopfinger v. Leapley,* 511 N.W.2d 845, 846–47 (S.D.1994). A "reasonable probability" is said to exist when there is proof sufficient to "undermine confidence in the outcome." *Phyle,* 491 N.W.2d at 432. We are not required to decide whether counsel's performance was sufficient before looking at whether the applicant was prejudiced by "alleged deficiencies." *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069, 80 L.Ed.2d at 699. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, ... that course should be followed." *Id.*

■■■ [¶ 13.] As suggested by the Supreme Court, we go directly to the second prong of the *Strickland* analysis. The question is, did the failure to request presentence psychological assessments with recommendations like the ones produced in the habeas proceeding prejudice the sentencing outcome? Testifying at the habeas evidentiary hearing were Ramos, his two trial attorneys, the prosecutor, and the sentencing judge. The psychological reports and depositions of McGrath and Ferguson were also admitted into evidence. In explaining their approach at the sentence hearing, the defense attorneys said that they presented Ramos as a fundamentally decent person who did not intend the death of his girlfriend. As one of the attorneys explained, "We wanted the Court to see the other side of Jack. We knew the Court was familiar with the crime that occurred, but didn't know a lot of things about Mr. Ramos that we did." Thus portrayed as having made a tragic mistake, Ramos was depicted as genuinely remorseful. The strategy was to point out Ramos' good characteristics and the positive parts of his relationship with the deceased. His defense attorneys felt that using psychological evidence displaying Ramos as emotionally or mentally impaired could be seen as an attempt to excuse his behavior, and might contradict their strategy. Overall, they tried to persuade the court that Ramos did not deserve a life sentence, an approach that had proved successful for them in another recent manslaughter case.

[¶ 14.] Ramos contends that his attorneys' "strategy" was no strategy at all. In hindsight, we can now reflect that the psychological assessments from McGrath and Ferguson would not appear to have contradicted the defense strategy. But though this approach may not have been inconsistent with obtaining psychological assessments on rehabilitation, we cannot conclude that McGrath's and Ferguson's assessments are so unequivocal and so compelling that had they been provided to the sentencing judge a life sentence would probably not have been given. Indeed, neither expert contradicted the sentencing judge's view that any rehabilitation would be a long-term process. Even if they had, sentencing judges are not required to accept an expert's opinion on rehabilitation. South Dakota is neither a "trial-by-expert" nor a sentencing-by-expert jurisdiction. *See Johnson v. Albertson's,* 2000 SD 47, ¶ 25, 610 N.W.2d 449, 455.

[¶ 15.] Both psychologists—even McGrath, whose opinion was more sanguine—rigorously conditioned their prognoses: if Ramos were cooperative, if he refrained from using alcohol and drugs, if he had the appropriate motivation, if stringent parole conditions could be imposed, and so on. These kinds of "ifs" are the same perilous variables judges must carefully weigh in sentencing any violent offender. Here, before sentencing, the trial judge reviewed a presentence investigation report, a psychological report prepared for competency purposes, and "a lot of correspondence" on behalf of Ramos and the victim. The judge considered all the traditional sentencing factors, including rehabilitation. His rehabilitative assessment was not materially different from Dr. Ferguson's. Ramos has shown neither that his sentence would have been different nor that his attorneys' purported errors were so serious that they deprived him of a fair and reliable sentence hearing. *Strickland,*

466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.

### E.

[¶ 16.] There is a second reason Ramos has failed to show prejudice. He places undue emphasis on an old and since modified standard: before a court can impose a life sentence rehabilitation must be so unlikely that it is removed from consideration in sentencing. *See State v. Raymond,* 1997 SD 59, ¶ 35, 563 N.W.2d 823, 830. In *Ramos I* we intimated that rehabilitation, though it must be considered, would not necessarily take controlling influence in sentencing. *Ramos I,* 1996 SD 37, ¶ 21, 545 N.W.2d at 822 (life sentence need not be only adequate punishment). We quoted Justice Potter Stewart in agreeing that "retribution is a constitutionally [permissible] ingredient in the imposition of punishment." *Ramos I,* 1996 SD 37, ¶ 15, 545 N.W.2d at 821 (*quoting Furman v. Georgia,* 408 U.S. 238, 308, 92 S.Ct. 2726, 2761, 33 L.Ed.2d 346, 389 (1972) (Stewart, J., concurring)).

[¶ 17.] Recently, in *State v. Milk,* 2000 SD 28, 607 N.W.2d 14, the defendant argued that rehabilitation "is a factor that must be ruled out before a life sentence may be imposed." *Milk,* 2000 SD 28, ¶ 18, 607 N.W.2d at 19. In recognizing a change in the law, we said "[c]learly there are some acts of such a criminal magnitude that they justify a life sentence whether the perpetrator is capable of rehabilitation or not." *Id.* We held that "[u]pon review we will address this subject only if we initially determine that there is a gross disproportionality in the sentence." *Id.* ¶ 18, 607 N.W.2d at 20 (citing *State v. Bonner,* 1998 SD 30, ¶ 17, 577 N.W.2d 575, 580). So too with a claim of prejudice from allegedly deficient performance by counsel during sentencing—prejudice will not be shown unless the sentence was grossly disproportionate. Our review goes no further if the circumstances do not suggest gross disproportionality. *Id.* In *Ramos I* we concluded that this sentence

did not violate the Eighth Amendment, a sentence we declared res judicata today.

[¶ 18.] We are not a sentencing review court empowered to examine whether judges properly weighed every variable and whether defense counsel supplied every conceivable piece of mitigating evidence. *Bonner,* 1998 SD 30, ¶ 11, 577 N.W.2d at 578 (we will not micromanage sentencing in South Dakota). Nor have we ever held that counsel must obtain expert evidence on rehabilitation or that mitigation evidence must be offered at every sentencing. The authorities habeas counsel cites to support this argument are death penalty cases where defense counsel had a duty to discover and offer mitigating evidence in the sentencing phase of a murder trial. *See, e.g., Turpin v. Christenson,* 269 Ga. 226, 497 S.E.2d 216 (1998); *People v. Ruiz,* 177 Ill.2d 368, 226 Ill.Dec. 791, 686 N.E.2d 574 (1997). In most other types of cases, defense attorneys may rely on the presentence reports offered at most felony sentencings in South Dakota. SDCL 23A–27. After learning the contents of the presentence report, the defendant and counsel are entitled to an opportunity to comment on it and, "in the discretion of the court, to introduce testimony or other information relating to any alleged factual inaccuracy contained in the presentence report." SDCL 23A–27–7.

[¶ 19.] Because Ramos has failed to show that he was prejudiced by his attorneys' alleged deficient performance, we uphold the habeas court's ruling on the ineffective assistance claim.

### F.

[¶ 20.] Lastly, although this issue has not arisen in a habeas appeal before, and in no way reflects on the integrity of the sentencing judge who was called to testify in this habeas proceeding, there is a critical principle at stake here that we must discuss. The sentencing judge testified at the habeas hearing about his sentencing rationale, and said, among other things, that after reviewing Ferguson's and McGrath's reports he would still have given the same sentence. This testimony

was wholly inadmissible and should have been prohibited. Just as jurors cannot be called to testify on their thought processes in deliberations, so judges cannot be summoned, even if willing, to explain their sentences or to speculate on whether their judgments might have been different with new evidence. *Perkins v. LeCureux*, 58 F.3d 214, 220 (6thCir.1995); *Proffitt v. Wainwright*, 685 F.2d 1227, 1255 (11thCir.1982); *United States v. Crouch*, 566 F.2d 1311, 1316 (5thCir.1978); *Morrison v. Kimmelman*, 650 F.Supp. 801, 807 (D.N.J.1986) (explaining rationale for the rule). The United States Supreme Court first announced this principle in *Fayerweather v. Ritch*, 195 U.S. 276, 306–307, 25 S.Ct. 58, 67–68, 49 L.Ed. 193, 213 (1904), and it remains sound law. The integrity of the sentencing process must be preserved, which means at the least that judges should not be subjected to this type of inquiry about their sentences. Justice Black reflected five decades ago: "Such an examination of a judge would be destructive of judicial responsibility." *United States v. Morgan*, 313 U.S. 409, 422, 61 S.Ct. 999, 1004, 85 L.Ed. 1429, 1435 (1941). In *Washington v. Strickland*, 693 F.2d 1243, 1263 (5thCir.1982) *reversed on other grounds*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in an en banc reversal of a district court death penalty habeas corpus decision, the Fifth Circuit wrote:

> We decide, however, that the portion of Judge Fuller's testimony in which he explained his reasons for imposing the death sentence and his probable response to the evidence adduced at the habeas hearing is inadmissible evidence that may not be considered by the district court.

[¶ 21.] A court speaks through the record made at the time of sentencing and the parties are entitled to rely on that record and the reasons given at the time. "It is a cardinal principle of Anglo–American jurisprudence that a court speaks only through its minutes." *Perkins*, 58 F.3d at 220. We do not suggest it is improper to call sentencing judges to testify purely on historical facts, i.e., identifying the defendant as the one sentenced, explaining if the defendant was represented, etc., but the practice should be limited to the most compelling circumstances, where no other evidence on a critical fact is available.

■■■ [¶ 22.] In this instance, we do not consider the admission of this testimony to be prejudicial error requiring a remand. *See Strickland*, 466 U.S. at 695, 700, 104 S.Ct. at 2068–69, 2071, 80 L.Ed.2d at 698–99, 701 (trial judge testimony harmless error).

[¶ 23.] Affirmed.

[¶ 24.] MILLER, Chief Justice, and AMUNDSON and GILBERTSON, Justices, concur.

[¶ 25.] SABERS, Justice, concurs in result in part and concurs specially in part.

SABERS, Justice (concurring in result in part & concurring specially in part).

[¶ 26.] This case is very troubling from many aspects:

1. Circuit Court Judge Davis testified as to his opinion on the question of excessiveness of the life sentence, which he previously imposed on Ramos. The majority opinion properly recognizes that this evidence was improperly solicited and received.

2. Circuit Court Judge Trimble, known to be a good friend of Judge Davis, heard the evidence on the habeas corpus hearing and decided the same in favor of the position advanced by Judge Davis. Obviously, a Circuit Court Judge may properly determine, on habeas, a decision of a fellow Circuit Court Judge. While not improper, it is troubling when the real issue in this habeas hearing is the excessiveness of Judge Davis' sentence and his opinion on Ramos' prospects for rehabilitation; i.e. the position of Judge Davis is the real issue.

3. Point 1 may be res judicata, but point 2 is not and neither is point 4:

4. The claim of ineffective assistance of counsel at sentencing arising from

trial counsel's failure to request psychiatric reports concerning rehabilitation.

5. Finally, the majority opinion states that our scope of review on habeas action is limited:

Habeas corpus can be used only to review (1) whether the court had jurisdiction of the crime and the person of the defendant; (2) whether the sentence was authorized by law; and (3) in certain cases whether an incarcerated defendant has been deprived of basic constitutional rights.

As evidenced by the appeal in *Rennich–Craig v. Russell,* 2000 SD 49, 609 N.W.2d 123, adherence to this improper standard of review is incorrect and confusing to the bench and the bar.

[¶ 27.] In *Rennich–Craig,* the State argued that Rennich was not entitled to habeas corpus relief based on a statutory violation. One can safely assume that this argument arose from this court's insistence on repeatedly setting forth the above standard of review. We disagreed with the State's argument and clarified that the standard of review in *Security Savings Bank v. Mueller,* 308 N.W.2d 761, 762–63 (S.D.1981) is the proper one for habeas corpus actions:

Although habeas corpus is not a substitute for direct appeal, appellant may assert jurisdictional errors which renders the first judgment void. In the context of habeas corpus, jurisdictional error is given an expansive construction. Of course, this includes personal and subject matter jurisdiction, but *due process violations and compliance with substantive statutory procedures are also subject to challenge in habeas corpus proceedings.*

*Rennich–Craig,* 2000 SD 49, ¶ 18, 609 N.W.2d at 127 (quoting *Security Savings Bank,* 308 N.W.2d at 762–63 (internal citations omitted) (emphasis added)). *See also* SDCL 21–27–16(3) (providing that habeas relief may be granted when "the process is defective in some substantial form required by law."); *St. Cloud v. Leapley,* 521 N.W.2d 118, 121 (S.D.1994) (stating that "[h]abeas corpus actions deal with such defects, 'as render the proceeding or judgment absolutely void.' " (quoting *State ex rel. Smith v. Jameson,* 80 S.D. 333, 335, 123 N.W.2d 300, 301 (1963))); *State ex rel. Ruffing v. Jameson,* 80 S.D. 362, 366, 123 N.W.2d 654, 656 (1963) (noting that claims of error and irregularities that may have been grounds for reversal on direct appeal are not properly reviewable in habeas proceedings; but "those actions in which the court may lose jurisdiction by a denial of due process" are properly reviewable in habeas).

[¶ 28.] For the benefit of the bench and bar, the old standard of review set forth in the majority opinion should be withdrawn, or modified to incorporate our recent decision in *Rennich–Craig.* Otherwise, as it stands, it is incorrect, confusing and meaningless dicta, which could be harmful.

[¶ 29.] For these reasons, I concur in result except on point 5, where I concur specially.