# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2203

_____

Grover Henderson,

      Appellant,

      v.

Larry Norris, Director,
Arkansas Department
of Correction,

      Appellee.

\* Appeal from the United States
\* District Court for the Eastern
\* District of Arkansas.

_____

Submitted:  February 15, 2001

Filed:  July 9, 2001

_____

Before WOLLMAN, Chief Judge, and BRIGHT and MORRIS SHEPPARD
     ARNOLD,  Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

An Arkansas state jury sentenced Grover Henderson to life imprisonment, *see*
Ark. Code Ann. § 5-4-103(a), for the first offense of which he has ever been convicted,
the delivery of .238 grams of cocaine base.  *See* Ark. Code Ann. § 5-64-401(a)(1)(i).
He appealed, contending that his sentence was cruel and unusual punishment under the
eighth amendment to the Constitution.  The Arkansas Supreme Court affirmed his
conviction in a four-to-three decision. *See Henderson v. Arkansas*, 322 Ark. 402, 411-

12, 910 S.W.2d 656, 660-61 (1995). Mr. Henderson then petitioned for federal habeas corpus relief under 28 U.S.C. § 2254 raising the eighth amendment issue. The district court denied Mr. Henderson's petition but granted him a certificate of appealability. We reverse and remand with directions to enter an order granting the writ.

## I.

We review the district court's findings of fact for clear error and its conclusions of law *de novo*. *See Richardson v. Bowersox*, 188 F.3d 973, 977 (8th Cir. 1999), *cert. denied*, 529 U.S. 1113 (2000). Because Mr. Henderson's habeas petition was filed before the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this appeal is subject to pre-AEDPA standards of review. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Even before passage of the AEDPA, we were of course obligated to defer to the factual findings of the state court. *See McDowell v. Leapley*, 984 F.2d 232, 233 (8th Cir. 1993). The state argues that deference must also be given to the state court's resolution of federal questions of law and mixed questions of fact and law. We disagree.

In *Miller v. Fenton*, 474 U.S. 104, 111-12 (1985), the Supreme Court held that mixed questions of fact and law in habeas cases are reviewed *de novo*. Here the state relies on *Teague v. Lane*, 489 U.S. 288, 310 (1989) (plurality opinion), to argue that because "new law" may not be applied in a habeas case, a federal court must defer to reasonable (although possibly erroneous) state court interpretations of federal law. In pre-AEDPA habeas cases since *Teague*, however, we have reviewed state court interpretations of federal law *de novo*, *see*, *e.g.*, *McIntyre v. Caspari*, 35 F.3d 338, 342 (8th Cir. 1994), *cert. denied*, 514 U.S. 1077 (1995), as well as state court conclusions regarding mixed questions of law and fact, *see, e.g.*, *McGurk v. Stenberg*, 163 F.3d 470, 473 (8th Cir. 1998), *see also id.* at 472 n.1, and *Reese v. Delo*, 94 F.3d 1177, 1183 (8th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997).

We believe that our application of *de novo* review in pre-AEDPA cases is consistent with the view of a majority of justices in *Williams v. Taylor*, 529 U.S. 362 (2000). In *Williams*, two justices agreed that, before passage of the AEDPA, federal courts were to exercise "independent judgment" when addressing questions of law or mixed questions of law and fact, and that *Teague* had no effect on the standard of review. *See Williams*, 529 U.S. 362, 400, 402 (2000) (opinion of O'Connor, J.). Four other justices in *Williams* would have given no deference to state court determinations of federal law before or after AEDPA. *See id.* at 383-84 (opinion of Stevens, J.). We therefore apply a *de novo* standard of review to determine whether Mr. Henderson's punishment violates the eighth amendment.

## II.

The eighth amendment to the Constitution provides that "[e]xcessive bail shall not be required nor excessive fines imposed, nor cruel and unusual punishments inflicted." In *Solem v. Helm*, 463 U.S. 277, 279-81 (1983), the Supreme Court had before it a sentence of life imprisonment without parole that was imposed on a person who had passed a "no account" check and had committed six prior non-violent felonies. The Court held that the sentence was cruel and unusual, stating that although "[r]eviewing courts ... should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments and crimes," *id.* at 290, punishment is cruel and unusual if it is "grossly disproportionate" to the crime, *id.* at 291 n.17, *see also id.* at 303.

In its most recent decision involving a proportionality review of a non-capital sentence under the eighth amendment, *see Harmelin v. Michigan*, 501 U.S. 957 (1991), the Supreme Court was sharply divided. Five justices agreed that a mandatory sentence of life imprisonment without parole for possession of 672 grams of cocaine, which was the defendant's first offense, was not cruel and unusual. *See id.* at 996.

Two of those justices would have overruled *Solem* and held that the eighth amendment does not provide for proportionality review in a non-capital case at all. *See Harmelin*, 501 U.S. at 985, 994 (opinion of Scalia, J.). Three other justices believed that proportionality review of a prison sentence exists under the eighth amendment, *see id.* at 997 (opinion of Kennedy, J.), but, emphasizing that a sentence is rarely "grossly disproportionate" to a crime, *id.* at 1005, they concluded that the defendant's sentence did not violate this standard, *see id.* at 1009. Since *Harmelin*, our court and others have applied the principles outlined in Mr. Justice Kennedy's opinion to cases like the present one. *See*, *e.g.*, *United States v. Gordon*, 953 F.2d 1106, 1107 (8th Cir. 1992), *cert. denied*, 506 U.S. 1015 (1992); *see also United States v. Jones*, 213 F.3d 1253, 1261 (10th Cir. 2000), and *United States v. Harris*, 154 F.3d 1082, 1084 (9th Cir. 1998), *cert. denied*, 528 U.S. 830 (1999).

### III.

In deciding whether a sentence is "grossly disproportionate" to a crime, *Harmelin*, 501 U.S. at 1005, we first compare the gravity of the offense committed to the harshness of the penalty imposed. *See id.* at 1001-02 (opinion of Kennedy, J.). To evaluate the severity of a crime, we consider the harm caused or threatened to the victim or to society and the culpability and degree of involvement of the defendant. *See Solem*, 463 U.S. at 292. In considering the culpability of the defendant, the court may look to the defendant's intent and motive in committing the crime. *See id.* at 293.

In assessing the seriousness of Mr. Henderson's crime, we first address the actual or potential harm that he caused to the victim or to society. Although drug crimes generally are considered serious, *see Harmelin*, 501 U.S. at 1002 (opinion of Kennedy, J.), *see also United States v. Meirovitz*, 918 F.2d 1376, 1381 (8th Cir. 1990), *cert. denied*, 502 U.S. 829 (1991), we believe that it denies reality and contradicts precedent to say that all drug crimes are of equal seriousness and pose the same threat to society. In *Solem*, 463 U.S. at 293, the Supreme Court remarked on the importance that the "absolute magnitude" of the crime may play in assessing the harm that it causes

or threatens, and the plurality in *Harmelin*, 501 U.S. at 1002, 1007-09 (opinion of Kennedy, J.), repeatedly emphasized the amount of cocaine involved in the crime in explaining why the defendant's sentence did not violate the eighth amendment.

In *Harmelin*, Mr. Justice Kennedy observed that the 672 grams of pure cocaine that the defendant possessed had "a potential yield of between 32,500 and 65,000 doses," *id.* at 1002, and that the state legislature could reasonably have decided that "this large an amount," *id.* at 1003, warranted a mandatory sentence of life without parole. *Id.* After referring to the amount of cocaine, Mr. Justice Kennedy concluded that, given the crime's severity, an extended proportionality analysis was unnecessary. *See id.* at 1004-05.

The pertinent statute in *Harmelin* mandated a life sentence without parole for possession of 650 grams of a "mixture" containing cocaine, *see id.* at 961 n.1 (opinion of Scalia, J.), and Mr. Justice Kennedy further noted that the defendant might have been prosecuted because he possessed "672.5 grams of undiluted cocaine" and other "trappings" of the drug trade, *id.* at 1008. When explaining that the defendant's crime was much more serious than the crime in *Solem*, Mr. Justice Kennedy referred to "the threat posed to the individual and society by possession of *this large an amount* of cocaine" (emphasis supplied), *id.* at 1003, and referred once more to the quantity of drugs involved in the defendant's crime in stating that state law gave notice of the penalty for the "possession of drugs in wholesale amounts," *id.* at 1008.

In Mr. Henderson's case, in contrast to the circumstances in *Harmelin*, the amount of drugs that Mr. Henderson sold was extraordinarily small: The three "rocks" of cocaine base, or crack, weighed less than one-quarter of a gram, which is less than a hundredth of an ounce. The weight or "absolute magnitude," *Solem*, 463 U.S. at 293, of the drugs involved in *Harmelin* was approximately 2,825 times the weight of the drugs possessed by Mr. Henderson, and nowhere near the 32,500 to 65,000 doses of

drugs involved in *Harmelin*. The price obtained for Mr. Henderson's minimal amount of drugs was a mere $20.

It is true that there was evidence that Mr. Henderson had sold two additional "rocks" of crack, but the jury was not instructed that it could take this conduct into account in fixing Mr. Henderson's sentence. Even taking two additional "rocks" into account, moreover, the total amount would be only five "rocks." As the district court noted, assuming that the "rocks" were equal in size, their total weight would be less than four-tenths of a gram, with a total value of about $33.33. Although the state contends that the amount of drugs involved is irrelevant to our inquiry (and that life imprisonment passes eighth amendment muster here no matter how microscopic the amount of drugs), we do not believe that the *Harmelin* plurality's repeated references to quantity or *Solem*'s reference, 463 U.S. at 293, to the "absolute magnitude" of the crime supports the state's contention.

In assessing the proportionality of the punishment, we also consider the culpability of the defendant. Mr. Henderson did not initiate the contact with the informant who bought the drugs or coerce the informant into buying them, and there was no evidence that he made any effort to sell this person any more than the .238 grams of cocaine base for which he was convicted. There is no indication that Mr. Henderson engaged in violence or had any weapons, and, unlike the circumstances in *Harmelin*, 501 U.S. at 1008 (opinion of Kennedy, J.), no "trappings" of the drug trade are part of the record.

We think it highly important, too, that Mr. Henderson had no prior convictions. Although the state correctly argues that it may impose a mandatory penalty without regard to prior convictions, *see id.* at 994-95, the Supreme Court has noted that recidivism is one consideration that may support the imposition of a severe penalty. *See Rummel v. Estelle*, 445 U.S. 263, 276 (1980). Here Mr. Henderson had no prior

convictions, and thus recidivism does not support the harsh sentence. *Cf. Meirovitz*, 918 F.2d at 1379, 1381.

In considering Mr. Henderson's culpability, we also note that there was evidence offered at his trial that he attempted to prevent a prosecuting witness from testifying by providing him transportation and expenses to travel to another state. The Arkansas Supreme Court held that this evidence was admissible to prove Mr. Henderson's guilt, *see Henderson*, 322 Ark. at 408-09, 910 S.W.2d at 658-59, but we note that the court did not rely on that evidence as a basis for rejecting his eighth amendment challenge to his sentence, *see id.*, 322 Ark. at 411-12, 910 S.W.2d at 660-61. More significantly, we believe, the jury that sentenced Mr. Henderson was never instructed that it could consider this evidence when deciding upon his sentence. Regardless of the abstract legal propriety of considering such evidence at sentencing, we will not presume for eighth amendment purposes that the jury in fact took this evidence into account when sentencing Mr. Henderson to life in prison. *Cf. Solem*, 463 U.S. at 296, *see also id.* at 296 n.21 (in recidivism case, courts evaluating proportionality of sentence "must focus on the principal felony -- the felony that triggers the life sentence").

IV.

We next consider the severity of the sentence. *See Harmelin*, 501 U.S. at 1000-01 (opinion of Kennedy, J.). In cases like this, the Supreme Court has acknowledged that there is a relevant difference between a life sentence with the possibility of parole and a life sentence without the possibility of parole. *See Rummel*, 445 U.S. at 280-81. The sentence given to Mr. Henderson, life imprisonment, is the harshest sentence given in Arkansas for all but two crimes, capital murder and treason. Only those convicted of these two crimes may be sentenced to death, or to what is termed life "without the possibility of parole," a sentence that precludes parole even if the governor commutes it to a term of years. *See* Ark. Code Ann. § 5-4-104(b), § 5-4-606, § 5-4-607(b), § 5-4-607(c).

With regard to all other life sentences, including Mr. Henderson's, the offender is not eligible for parole unless the governor in the exercise of clemency commutes the sentence to a term of years; the offender is then eligible for parole through the normal parole procedures. *See* Ark. Code Ann. § 16-93-607(c)(1). Arkansas's model jury instructions specifically state that "[p]ersons under sentence of life imprisonment are not eligible for parole," *see* Ark. Model Criminal Instructions 2d 9403 (1996), and the jury was so instructed in this case.

Although the state asserts that over the years some offenders sentenced to life imprisonment in Arkansas have received a commutation from a governor of the state, we find nothing in the case papers that reveals the number of offenders who have sought a commutation or the number of years that those sentenced to life have served before being granted a commutation. Furthermore, as the Supreme Court noted in *Solem*, 463 U.S. at 303 n.29, past practice with respect to commutations "is not a reliable indicator of future performance when the relevant decision is left to the unfettered discretion of each Governor." The "heart of executive clemency ... is to grant clemency as a matter of grace," *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272, 280-81 (1998) (plurality opinion), and clemency is "a favor which may be arbitrarily extended or withheld," *Nelson v. Hall*, 171 Ark. 683, 687, 285 S.W. 386, 388 (1926).

In *Solem*, 463 U.S. at 297, 300-03, 301 n.28, the Supreme Court found that the inherent distinction between parole and commutation was significant in this kind of case. The defendant's sentence in *Solem* was described as life without parole, but the governor had the power to commute the sentence to a fixed term, after which the defendant would be eligible for parole after serving three-fourths of the new term. *See id.* at 283. The Court distinguished these circumstances from the life sentence given in *Rummel*, where the defendant could be eligible for parole in twelve years. *See id.* at 302-03.

Although more commutations have been granted in Arkansas than in South Dakota (the state in question in *Solem*, *see id.* at 279), we believe that the distinction between parole and commutation addressed in *Solem*, *id.* at 300, is pertinent here: "As a matter of law, parole and commutation are different concepts.... Parole is a regular part of the rehabilitative process. Assuming good behavior, it is the normal expectation in the vast majority of cases." The Court concluded, in contrast, that "[t]he possibility of commutation ... is little different from the possibility of executive clemency that exists in every case in which a defendant challenges his sentence under the Eighth Amendment," *id.* at 303.

V.

We infer, for the reasons indicated, that Mr. Henderson's sentence is grossly disproportionate to his crime. Before we can determine whether the eighth amendment was violated, however, we are required to make a further inquiry. "[I]ntrajurisdictional and interjurisdictional analyses are appropriate ... in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality," *Harmelin*, 501 U.S. at 1005 (opinion by Kennedy, J.).

We first note that, with respect to Mr. Henderson's direct appeal to the Arkansas Supreme Court, the dissent, in which three of the seven judges joined, stated that "[t]his is the first time that a life sentence has been affirmed in this State where the defendant's crime was one offense and a first offense and where the quantity of drugs sold was such a minor amount," *Henderson*, 322 Ark. at 413, 910 S.W.2d at 661 (Brown, J., dissenting). The dissent went on to list other Arkansas decisions in which life sentences were affirmed, *see id.*, 322 Ark. at 414-15, 910 S.W.2d at 662, but all of them involved repeat offenders or more serious crimes. The dissent concluded that the sentence "was so wholly disproportionate to the nature of the offense as to shock the moral sense of the community," *id.*, 322 Ark. at 413, 910 S.W.2d at 661.

In the district court, the state provided the names of two other offenders sentenced to life imprisonment in Arkansas for a first offense involving a minimal amount of drugs. We note that one of these convictions was overturned on other grounds in a habeas corpus proceeding. *See Bragg v. Norris*, 128 F. Supp. 2d 587 (E.D. Ark. 2000). As to the other named offender, Leonard Robinson, we observe that the state has stipulated that its prison records may not be complete or accurate. Based on this statement, we are uncertain whether to give credence to the reference to Mr. Robinson, particularly because of the facts of *Robinson v. State*, 317 Ark. 407, 878 S.W.2d 405 (1994). According to this decision, a "Leon Ray" Robinson was convicted of "two counts of delivery of a controlled substance," *id.*, 317 Ark. at 407, 878 S.W.2d at 405, was sentenced to fifteen years on the first count and to life imprisonment on the second, *see id.*, 317 Ark. at 408, 878 S.W.2d at 406, and "had a previous drug conviction," *id.*, 317 Ark. at 410, 878 S.W.2d at 407. We are further confused because the state's list of offenders who received a life sentence for drug offenses includes only one "Leon" Robinson and no one with a similar name. In any event, the evidence indicates that Mr. Henderson's sentence as a first offender for delivery of less than one-quarter of a gram of crack is highly unusual and perhaps unique in Arkansas.

As we have already said, life imprisonment is the harshest sentence available for almost any crime in Arkansas, including more obviously violent crimes. Other felonies in Arkansas for which this is the most severe penalty available include first-degree murder, *see* Ark. Code. Ann. § 5-10-102, rape, *see* § 5-14-103, and kidnapping, *see* § 5-11-102; *see also* § 5-4-104(c)(1), § 5-4-401(a)(1).

We believe, moreover, that Arkansas's advisory sentencing guidelines, applicable to judicially imposed sentences for crimes that occurred after 1993 (the year of Mr. Henderson's crime), provide further evidence of the gross disproportionality of his sentence. Under those guidelines, a defendant convicted of Mr. Henderson's offense for the first time would receive a presumptive sentence of three and one-half years, *see Henderson*, 322 Ark. at 416 n.1, 910 S.W.2d at 663 n.1 (Brown, J., dissenting),

-10-

although the ten-year statutory minimum would trump the guidelines in this instance, *see id.* The guidelines are advisory only, and deviations may be supported by aggravating circumstances, such as witness intimidation or tampering with the evidence, *see* Ark. Code Ann. § 16-90-804(d)(2)(J), *see also Henderson*, 322 Ark. at 416 n.1, 910 S.W.2d at 663 n.1, but we believe that the striking contrast between the recommended three and one-half years and the life imprisonment that Mr. Henderson received supports our preliminary conclusion that his sentence violates the eighth amendment.

It is also appropriate to compare Mr. Henderson's sentence with sentences imposed for the same crime in other jurisdictions. *See Solem*, 463 U.S. at 291. Although the state contends in its brief that "such lengthy sentences ... are not uncommon in ... other jurisdictions for similar drug offenses," the state's contention is belied by the only two examples that it offers. The state first cites a forty-year-old decision from Washington state upholding a sentence of life imprisonment for a first offense of possession of an unspecified amount of "narcotics," *Washington v. Boggs*, 358 P.2d 124, 125 (Wash. 1961), but because the case does not reveal the amount of drugs involved, we do not find it persuasive here.

In the second case, *Carmona v. Ward*, 576 F.2d 405, 407 (2d Cir. 1978), *cert. denied*, 439 U.S. 1091 (1979), the defendants were sentenced to indeterminate terms of four years to life and six years to life, but were eligible for parole after serving their minimum terms, *see id.* at 414. The Second Circuit, in response to an eighth-amendment challenge, upheld the sentences in an opinion that emphasizes the availability of parole. *See id.* at 413-14.

We have located only three other states that permit a life sentence for a first offense involving the delivery of the amount of crack cocaine that Mr. Henderson sold, namely, Idaho, Montana, and Oklahoma. *See*, respectively, Idaho Code § 37-2707(b)(5), § 37-2732(a)(1)(A); Mont. Code Ann. § 45-9-101(1), § 45-9-101(2), § 50-

32-101(b), § 50-32-101(18)(d), § 50-32-224(1)(d); and Okla. Stat. Ann. tit. 63, § 2-101-8, § 2-101.26.c, § 2-206-A.4, § 2-401-A.1, § 2-401-B.1. Many other states, in contrast, provide for a much lower maximum term for such an offense. In *Solem*, 463 U.S. at 300, the Court noted that one other state "merely authorized" life imprisonment without parole in the circumstances present in that case. *See id.* at 299-300. The Court added, "We are not advised that any defendant [in that other state], whose prior offenses were so minor, actually has received the maximum penalty," *id.* at 300.

Similarly, the three states that we have named "merely authorize[]," *id.*, life imprisonment for a first-offense delivery of less than one-quarter of a gram of cocaine base. And not only are we "not advised," *id.*, that any defendant in Mr. Henderson's circumstances has ever received the maximum sentence in any of these states, the sentence of "life imprisonment" in these other jurisdictions, unlike Mr. Henderson's sentence, appears, with the possible exception of Idaho, to allow for parole without any prior action being required of the governor. We note finally that under the federal sentencing guidelines Mr. Henderson would receive a sentence of only ten to sixteen months for his offense, *see* U.S.S.G. § 2D1.1(a)(3), § 2D1.1(c)(14), and that even if an enhancement were imposed for obstruction of justice, *see* § 3C1.1, his sentencing range would be fifteen to twenty-one months.

## VI.

Based on our initial examination of the severity of the crime that Mr. Henderson committed and the harshness of the penalty that he received, we reached the preliminary conclusion that the penalty imposed in this particular case is grossly disproportionate to the crime. Our comparison of the sentence imposed in this case with other sentences imposed in Arkansas and with sentences imposed for the same or similar crimes in other jurisdictions has done nothing to undermine our original conclusion: In fact, we believe that the comparison provides strong support for the

inference that we originally drew. We therefore conclude that Mr. Henderson's sentence violates the eighth amendment.

We do not reach this conclusion lightly. Only after careful consideration do we finally hold that this is one of those rare cases in which the sentence imposed is so harsh in comparison to the crime for which it was imposed that it is unconstitutional.

Accordingly, we remand this case to the district court with directions to enter an order granting the writ if, within ninety days following the issuance of our mandate, the state of Arkansas has not resentenced Mr. Henderson.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.