# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-4023

_____

Joaquin Ramos,                              *
                                            *

           Appellant,           *
                                             *   Appeal from the United States
    v.                            *   District Court for the District
                                           *   of South Dakota.
Douglas Weber, Warden,        *
South Dakota State Penitentiary,  *
                                             *

           Appellee.            *

_____

Submitted:  August 20, 2002

Filed:  August 27, 2002

_____

Before HANSEN, Chief Judge, FAGG and BYE, Circuit Judges.

_____

FAGG, Circuit Judge.

After drinking at a local bar, Joaquin Ramos returned to the home he shared with his fiancee, Debbie Martinez, and her children to find Debbie not at home. Ramos learned Debbie had taken a cab to a bar, called the cab company, and angrily demanded that the cab driver turn around and bring Debbie home. Ramos became violent while awaiting Debbie's return and threatened Johnny Jibben, a coworker who had given Ramos a ride home. Jibben's wife arrived and took the children outside. Ramos demanded that the children come back in the house. Jibben and Ramos began to fight. By the time Debbie arrived home, Jibben was holding Ramos down on the

floor. Debbie told Jibben she could handle the situation and asked him to release Ramos. Ramos then slapped Debbie and threw a table. Ramos retrieved a gun from the rear of the house. When Debbie attempted to prevent Ramos from following Jibben outside, Ramos pulled her hair and hit her with the gun. The gun discharged, shooting Debbie in the neck and killing her.

Ramos pleaded guilty to first-degree manslaughter. The sentence was left open by the plea agreement, and under South Dakota law, ranged from a term of years to life in prison. S.D. Codified Laws §§ 22-6-1, 22-16-15 (Mitchie 1998). Because life imprisonment forecloses the need for rehabilitation, under South Dakota law, a life sentence may be imposed when rehabilitation is unlikely, provided the life sentence does not constitute excessive retribution. State v. Ramos, 545 N.W.2d 817, 821-22 (S.D. 1996) (Ramos I). Although no evidence on Ramos's prospects at rehabilitation was presented at the sentencing hearing, the trial court concluded that because of Ramos's history of abusive and controlling relationships with women, any prospect of rehabilitation was remote. The trial court sentenced Ramos to life in prison without the possibility of parole. On appeal, the South Dakota Supreme Court affirmed Ramos's conviction and sentence. Ramos I, 545 N.W.2d at 818. Ramos then sought habeas relief in state court, claiming the sentencing court denied him due process by concluding his prospects for rehabilitation were remote, and counsel was ineffective for failing to request psychological assessments for use at sentencing. The South Dakota Supreme Court rejected these contentions and denied habeas relief. Ramos v. Weber, 616 N.W.2d 88, 90 (S.D. 2000) (Ramos II).

Ramos then filed a petition seeking federal habeas relief. The district court[*] denied Ramos's petition, but granted a certificate of appealability on two issues: whether Ramos's attorneys were ineffective for failing to present evidence about his

---

[*]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota.

prospects of rehabilitation at sentencing, and whether the life sentence violated the Eighth Amendment's prohibition against cruel and unusual punishment. Having reviewed the district court's determinations de novo, we affirm. Carter v. Kemna, 255 F.3d 589, 591 (8th Cir. 2001), cert. denied, 122 S. Ct. 822 (2002).

A federal court's power to grant habeas relief to a state prisoner is limited to cases where the state court's rejection of the merits of a prisoner's claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (2000); Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or it the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A state court decision is an unreasonable application of federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. We presume South Dakota's factual findings are correct. 28 U.S.C. § 2254(e)(1).

We first consider and reject Ramos's claim that counsel was ineffective at sentencing for failing to request psychological assessments of rehabilitation potential. In order to prove counsel was ineffective, Ramos must show counsel's assistance fell below the wide range of reasonable professional assistance, and Ramos was prejudiced by counsel's actions. Strickland v. Washington, 466 U.S. 668, 687 (1984). Although Ramos offers two psychological evaluations conducted for the state habeas proceeding which offer hope of rehabilitation potential, we determine whether counsel's actions were reasonable considering the circumstances known by the attorney at the time of sentencing, without the benefit of hindsight. Simmons v. Iowa,

28 F.3d 1478, 1481 (8th Cir. 1994). The South Dakota Supreme Court rejected Ramos's ineffective assistance claim, concluding Ramos could not show prejudice. We agree.

Although the psychological assessments presented by Ramos offer hope for rehabilitation, the expert opinions do not contradict the trial court's view that rehabilitation would be a long-term process. As the South Dakota Supreme Court points out, both experts conditioned their estimate of rehabilitation potential on Ramos's cooperation, ability to refrain from using alcohol or drugs, motivation, and imposition of stringent parole conditions. Ramos II, 616 N.W.2d at 93. Even if the opinions had been requested and offered at sentencing, the trial court was not required to accept the expert's opinions on rehabilitation. Id. Further, there is no guarantee the expert opinions would have been the same if the evaluations had been conducted before sentencing rather than three years later, before the habeas proceeding. Indeed, a competency evaluation conducted before trial involved the same test later used by Ramos's experts (the Minnesota Multiphasic Personality Inventory) but yielded different results. At sentencing, counsel presented lay witnesses and evidence showing Ramos as a "decent person who did not intend the death of his girlfriend." Id. Counsel believed using psychological evidence showing "Ramos as emotionally or mentally impaired could be seen as an attempt to excuse his behavior" and might contradict their strategy of showing Ramos as genuinely remorseful. Id. Contrary to Ramos's assertion, counsel did not neglect investigating Ramos's mental health and, in fact, requested a psychiatric evaluation to determine whether Ramos was competent to stand trial. Lingar v. Bowersox, 176 F.3d 453, 461 (8th Cir. 1999). Counsel is not required to obtain expert evidence on rehabilitation and, in most cases, may rely on the presentence investigation report. Ramos II, 616 N.W.2d at 94. Given this evidence, we cannot say it was contrary to or an unreasonable application of federal law for South Dakota to conclude Ramos did not receive prejudicial ineffective assistance of counsel when counsel failed to request a psychological assessment of rehabilitation potential. Williams, 529 U.S. at 413.

Second, we consider and reject Ramos's contention that his life sentence violates the Eighth Amendment prohibition against cruel and unusual punishment. To prove an Eighth Amendment violation, Ramos must show the life sentence is grossly disproportionate to the crime of first-degree manslaughter. United States v. Prior, 107 F.3d 654, 660 (8th Cir. 1997). In determining whether a sentence is grossly disproportionate, "we first compare the gravity of the offense committed to the harshness of the penalty imposed." Henderson v. Norris, 258 F.3d 706, 709 (8th Cir. 2001). In evaluating the gravity of the offense, "we consider the harm caused or threatened to the victim or to society and the culpability and degree of involvement of the defendant." Id. We evaluate the culpability of the defendant by looking at the defendant's intent and motive in committing the crime. Id. If the penalty appears grossly disproportionate given the offense, we then compare the sentence with sentences imposed on other criminals in the same jurisdiction and the sentences imposed for violations of the same crime in other jurisdictions. Hutto v. Weber, 275 F.3d 682, 684 (8th Cir. 2001). We begin by addressing Ramos's culpability.

Both the prosecution and defense agree that Ramos did not intend to kill Debbie. In that respect, Ramos's case is different from cases of intentional murder or kidnapping and torture where we have concluded life sentences are not grossly disproportionate. See, e.g., Rhode v. Olk-Long, 84 F.3d 284, 290 (8th Cir. 1996) (holding a life sentence is not grossly disproportionate for the murder of a four-month old child with malice aforethought); Simmons, 28 F.3d at 1480 (life sentence for first-degree kidnapping and torture of child not grossly disproportionate). Despite the lack of intent to kill, however, Ramos is fully culpable for Debbie's death. Ramos chose to drink alcohol, chose to retrieve a firearm to frighten Jibben, and chose violently to assault Debbie. Ramos is solely responsible for making each of these choices, and thus bears the responsibility for Debbie's resulting death.

Having considered culpability, we next acknowledge the gravity of the offense. South Dakota has determined that killing another person, whether it be murder or

manslaughter, is sufficiently grave to deserve life imprisonment. S.D. Codified Laws §§ 22-6-1, 22-16-15 (Mitchie 1998). Legislatures are entitled to wide latitude in prescribing punishments. Rhode, 84 F.3d at 290. In assigning the maximum possible penalty, the trial court discussed Ramos's threatened harm to society arising from his need to control those around him. The South Dakota Supreme Court concluded that these statements about Ramos's need for control and danger to others were sufficient to support the life sentence and did not constitute excessive retribution. Ramos I, 545 N.W.2d at 822. We agree.

Ramos argues the sentence is disproportionately harsh because this was his first felony offense. Several cases upholding a life sentence for noncapital crimes have considered the defendant's recidivist status. Rummel v. Estelle, 445 U.S. 263, 265 (1980) (upholding constitutionality of life sentence for recidivist with convictions for fraudulent use of credit card, forging a check, and obtaining money by false pretenses); United States v. Kratsas, 45 F.3d 63, 65 (4th Cir. 1995) (holding the law is well-settled that mandatory life sentences are constitutional when applied to repeat felony drug offenders). Although Ramos had not been convicted of a felony before Debbie's killing, the record shows this was not Ramos's first violent act. Ramos had been convicted of misdemeanors including simple assault for hitting his then-wife Angela because he did not like what she was wearing, simple assault for beating a fellow bar patron that resulted in visible bruises and a fractured rib, and simple assault for threatening his girlfriend Brenda with a butcher knife. In addition, the record shows witness accounts of Ramos's repeated domestic assaults on his wife Angela, girlfriend Brenda, and fiancee Debbie. (J.A. at 244-253). Ramos reportedly threatened to kill these women if they left him. He smashed car windows and stereos when angry and left bruises on his loved ones from the beatings. The trial court noted these incidents of violence were becoming more frequent and Ramos could not control his need to control others. Given the trial court's careful consideration of Ramos's record of violence and the circumstances surrounding Debbie's killing, we cannot conclude sentencing Ramos to life in prison without the possibility of parole

was grossly disproportionate to the crime. Because we do not find the life sentence too severe a penalty given the crime, we need not compare Ramos's sentence to those of other offenders or other jurisdictions. <u>Hutto</u>, 275 F.3d at 684. In sum, we conclude the South Dakota Supreme Court's rejection of Ramos's Eighth Amendment claim is neither contrary to nor an unreasonable application of clearly established federal law. <u>Williams</u>, 529 U.S. at 413.

Having concluded South Dakota's rulings are not contrary to nor an unreasonable application of clearly established federal law, we affirm the district court's denial of Ramos's habeas petition.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.